

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

March 6, 1963

Mr. Jules Damiani, Jr.　　　　　Opinion No. C-27
Criminal District Attorney
Galveston County　　　　　　　　Re: Whether the Moody House is
Galveston, Texas　　　　　　　　　　exempt from the payment of
　　　　　　　　　　　　　　　　　　　ad valorem taxes under the
Dear Mr. Damiani:　　　　　　　　　stated facts.

　　　　You have requested our opinion as to whether or not
the property set out in your statement of facts is exempt
from ad valorem taxes. The following facts are copied from
your letter:

　　　　　　　　"The property originally known as the
　　　　　　Buccaneer Hotel, including the Buccaneer
　　　　　　Cabanas and Pool was acquired by The
　　　　　　Methodist Homes for Older People, a
　　　　　　charitable corporation incorporated
　　　　　　under the laws of the State of Texas,
　　　　　　on the 29th day of December, 1961, as
　　　　　　a gift from The Moody Foundation, and
　　　　　　commenced operating it as a home for
　　　　　　older people on the 1st day of January,
　　　　　　1962.

　　　　　　　　"The Methodist Homes for Older People
　　　　　　was required to take title to the property
　　　　　　subject to any and all leases and rental
　　　　　　contracts then in existence. There were
　　　　　　three (3) outstanding leases for store or
　　　　　　office space that are still in effect and
　　　　　　from which the present owner receives a
　　　　　　small rental. All of the rents received
　　　　　　from these three (3) tenants is by action
　　　　　　of the Board, being placed in a special
　　　　　　'Health Care Trust Fund' and is used
　　　　　　solely for health and welfare care of
　　　　　　residents of Moody House.

　　　　　　　　"One of the rental units is occupied
　　　　　　as a barber shop which is being operated
　　　　　　almost entirely for the convenience of
　　　　　　the residents of Moody House. The other

-109-

rental units are a small gift shop and
the Galveston Merchants Association, all
of which have leases that were in effect
at the time the property was acquired and
as above stated, the present owner was
required to accept the title subject to
these leases. The total rental received
from these units amounts to only $375.00
per month.

"This property is maintained and operated
as a home for older people and offers full
custodial and nursing care. Some of the
present residents are not in a financial
position to pay for their entire care and
maintenance which is being subsidized from
other funds. Moody House in 1962, paid an
average of approximately $1,000.00 per
resident as subsidization. It will con-
tinue to be the policy to accept residents
at Moody House who will require some sub-
sidization for their care and support.

"Moody House has been licensed by the
State Health Department for a nursing
home and this service is now being offered
with five (5) nurses being provided. The
care being offered to residents of Moody
House includes lodging, meals, medical
and nursing service.

"The Methodist Homes for Older People
is incorporated under the Texas Nonprofit
Corporation Act for charitable and benevo-
lent purposes. Moody House, operated by
said corporation, is a project of The Texas
Conference of The Methodist Church, and is
operated by an administrator and staff under
the supervision of an Executive Steering
Committee appointed by the Board of Direc-
tors of said corporation and approved by
the Annual Conference of The Methodist
Church.

"The Administrator and Steering Committee
have attempted to determine what it will cost
to operate Moody House. The charges being
made to residents are expected to underwrite
the cost of furnishing the residents' living
quarters, all meals, a complete staff including

an administrator, a full time Director of Social Activities, a resident doctor, a sufficient nursing staff which includes registered nurses and licensed vocational nurses.

"There is no admission fee or a fixed amount for admission to Moody House. In each case the matter of the amount to be paid by the resident is negotiated and a mutual agreement as to the amount to be paid by the individual is determined from his needs and ability to pay. It is not expected that every person will underwrite the cost of his or her care, and it is not expected that any person will be in such financial circumstances as to require full financial aid. All funds received from residents, rentals or otherwise, will be used for the care and maintenance of the residents, and that such funds will be from time to time supplemented by The Methodist Church.

"With reference to paragraph three, you will note that there are various units rented out in the Moody House to private individuals. Vernon's Annotated Civil Statutes, Article 7150 and The Constitution of the State of Texas, Article 8--section 2, holds that to be an institute of purely public charity so that its property may be exempt for taxation, the institution must be one whose property is used wholly and exclusively for charitable purposes. In BPOE Lodge No. 151 vs City of Houston, 44 SW2nd 488, there is a holding that where individual concessions were leased out to individuals and were not used solely for the benefit of the organization, that said organization would not be exempt from taxation. It is the writer's opinion that the Moody House is basically a charitable institution, however, under the holding herein before cited it would appear by leasing for a fee its premises to individuals other than the residents of the institution and the allowance of the public to patronize and use these facilities would result in the ruling that the Moody House was not a

charitable organization and is not exempt
from taxation. Your opinion is respect-
fully requested."

Under the facts stated, it appears that the organization
owning this property described has complied with the necessary
law and facts to make it a charitable institution, and the pro-
perty would be exempt from ad valorem taxes were it not for the
fact that certain parts of the property are being leased to
tenants as stated in your request. This matter has been dis-
cussed at length in opinions heretofore rendered by this depart-
ment, being Opinions Nos. WW-1277 dated March 16, 1962, WW-1424
dated August 24, 1962, and WW-1427 dated August 30, 1962, copies
of which are enclosed herewith.

In <u>Morris v. Lone Star Chapter No. 6, Royal Arch
Masons</u>, 68 Tex. 698, 5 S.W. 519 (1887), the facts show that
the building known as the Masonic Temple was used by plaintiff
and other Masonic organizations to hold their meetings but that
a part of the building was rented to different persons, and
plaintiff received a monthly rental for each of said rooms
rented amounting in the aggregate to about $150.00 per month
for all of the rooms in the first and second stories in the
building.

The Court in its opinion had the following to say:

". . . The burden of showing that an
exemption from taxation exists, rests upon
the party who claims it, . . . and when the
construction of the law is doubtful, the
doubt will be resolved in favor of the state,
and against the exemption, . . . Applying
these rules, we conclude that the building
in question is not 'used exclusively' by
appellee in the sense given to these words
in the constitution; the exclusive use meant
being the actual and direct use for the pur-
poses of the association, and not a use by
others for revenue, although that revenue
may be exclusively appropriated for the
objects of the charity. The legislature
in exercising the power conferred by the
constitution seems to follow the construc-
tion we have adopted, and exempt 'all
buildings belonging to institutions of
purely public charity, together with the
lands belonging to and occupied by such
institutions, not leased or otherwise used
with a view to profit, and all moneys and

> credits appropriated solely to sustaining
> such institutions.' This means that a
> building leased for profit is not exempt
> although such profit may be appropriated
> solely to the purposes of the charity,
> and not to the private gain of its pro-
> moters or stockholders. . . ."

In City of Houston v. Scottish Rite Benev. Ass'n.,
111 Tex. 191, 230 S.W. 978 (1921), the members of the Ancient
and Accepted Scottish Rite of Freemasonry of the City of Houston
purchased certain property which was known as Scottish Rite
Cathedral. The lot and building situated thereon was actually
used by members of the association, and no part of the same was
rented or used by any other person or institution. The asso-
ciation owned no property used with a view to profit. It had
no capital stock and declared no dividends. This property was
used by the Masonic orders, including San Jacinto Lodge of
Perfection No. 6 and the Houston Chapter of Rose Croix No. 5,
each of which collected membership fees and dues which were
used for charitable purposes other than the bare necessities
for the lodge. No person received any salary or profit directly
from the lodge or lodges. The building was used principally for
meetings of the various Masonic orders.

The facts further showed that the association was not
one that did nothing but dispense charity, but it did dispense
charity. The main purpose of the association was to provide a
lodge and place of meeting, and to look after and provide for
individual Masons and their families.

The Court said in its opinion:

> "By the very manner and terms of this
> property's acquisition, it was required
> to be used, as it was in fact used, by
> the two Masonic orders, 'to enable them
> to pursue their work as Masonic lodges,'
> such work being, as agreed, only partly
> charitable.

> "To the extent that the property was
> used by Masonic organizations, whose
> activities included other fields than
> charity, it was not, and could not be,
> used exclusively by an institution of
> purely public charity. Not being used
> exclusively by an institution of purely
> public charity, the claim to exemption
> under the constitutional provision fails,

and our answer to the certified question
is that the property was subject to taxa-
tion."

In the case of B.P.O.E., Lodge No. 151 v. City of
Houston, 44 S.W.2d 488 (Tex.Civ.App. 1931, error ref.), the
City of Houston sued the Elks Lodge for ad valorem taxes on
the property occupied by the lodge. The facts showed that
the lodge dispensed charity but carried on other activities
such as games, dances and other social activities for the pur-
pose of entertaining its members and securing new members.

The Court said that whether appellant is a purely
charitable institution is one of fact. There was within the
building a barbershop, the proprietor of which paid no rent
but kept all the money he took in from services rendered to
members of the lodge, a gymnasium instructor, and a restaurant
operator, none of whom paid any rent or money to the lodge.

The Court said:

"Under the law, for the property of
appellant to be exempt from taxation, it
must not only be owned, but also be used
exclusively, by an institution of purely
public charity. Is it so used here? The
barbershop is operated by one who gets
all the income. He pays no rent, but he
gets free space to operate his trade, and
retains for himself all the income. The
man who runs the gymnasium is a paid
instructor. He not only receives $200 a
month as instructor, but he keeps in the
gymnasium his own stock of supplies and
sells them to the members, has free space,
and retains the whole of the income for
his own use. The man who runs the restau-
rant also keeps and furnishes all his
supplies and retains all the income. He
shares in the use of space free of rent.
The man who gives electric baths furnishes
the towels and rubbing liniments and keeps
all the income. . . .

" . . .

"Exemptions from taxation are not favored,
and the law allowing exemptions should be
given a strict interpretation. It is the
policy of the state, and but justice between

its citizens, that all property should be taxed, and that no property shall escape this common burden, unless it comes clearly within the exemption, and it was incumbent on the appellant to show that it comes within the exemption clauses of the Constitution and the statute. We do not think this has been shown."

It is our opinion that since portions of the Moody House are rented to private individuals who pay rent to the operators of Moody House, that in accordance with the decisions above, this property is not used exclusively for charitable purposes and therefore does not meet the requirements to be exempt from taxation.

## SUMMARY

Under the facts stated the property involved in this opinion is not used exclusively by an institution of purely public charity and is therefore not exempt from ad valorem taxes.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: J. H. Broadhurst
Assistant

JHB:pw

Enclosures

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Joe R. Long
Brady Coleman
Albert Pruett
Jerry Brock

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone